UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

DERRAN TRENT WILLIAMS,

          Defendant.
_____/

Criminal No. 13-cr-20096

Hon. Mark A. Goldsmith
United States District Judge

## **OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS (DKT. 11)**

### **I. INTRODUCTION**

This matter concerns the effect of state and federal cooperation on Defendant Derran Trent Williams's statutory and constitutional right to a speedy trial. Before the Court is Defendant's motion to dismiss the indictment (Dkt. 11). Defendant argues that his arrest in December 2011 was a federal, rather than state, arrest, and thus his speedy trial calculation began at that time. The Government filed a response (Dkt. 14), the Court held a hearing on December 3, 2013, and the parties submitted supplemental briefs thereafter (Dkts. 15, 16). For the reasons discussed below, the Court denies Defendant's motion.

### **II. BACKGROUND**[1]

On December 29, 2011, a team composed of federal agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and local police, and led by Flint Police Sergeant

---

[1] The parties have provided virtually no documentary evidence supporting the facts outlined in their briefing. Accordingly, the Court derives its facts from the briefing itself and the motion hearing.

1

Devon Bernritter,[2] executed a search warrant of Defendant's residence. Def.'s Mem. at 2; Gov't Br. at 2. The warrant was obtained by Sergeant Bernritter from a Michigan state court; it permitted a search of the premises for firearms, ammunition, and related items believed to be evidence of possession of firearms by Defendant, a convicted felon, in violation of Mich. Comp. Laws § 750.224f. Gov't Br. at 2. At the time of the search, Defendant was on parole from a state sentence. Id.

The officers found firearms in the residence, and they arrested Defendant for being a felon in possession. Def.'s Mem. at 2; Gov't Br. at 3. Defendant was taken to a local jail, where he was "booked" on the state felon-in-possession charge and then released the same day pending further investigation. Def.'s Mem. at 2; Gov't Br. at 3. No charges were immediately brought against Defendant. However, Defendant was brought into state custody on or around January 18, 2012 for a state parole violation, likely arising from the firearms found in his residence. Def.'s Mem. at 2; Gov't Br. at 3. He has remained in state custody as a state parole violator since that date. Def.'s Mem. at 2; Gov't Br. at 3; Def.'s Supp. Br. at 3.

Defendant alleges that on January 19, 2012, Sergeant Bernritter submitted a standard "ATF report" regarding the December 2011 search and arrest. Def.'s Supp. Br. at 3. He claims the report was approved by the Resident Agent in charge of the Flint ATF field office that same day. Id.

The Government contends that a joint task force of federal and state agents ultimately decided to refer the felon-in-possession charge to the federal government for possible prosecution under federal law. Gov't Br. at 3. The Government claims that Sergeant Bernritter correspondingly completed the ATF report on April 20, 2012, with the certified copies of

---

[2] Defendant believes Sergeant Bernritter was sworn as a federal agent. Def.'s Supp. Br. at 2. The Court has no evidence that supports or refutes this belief, but it does not impact its analysis.

2

Defendant's prior felony conviction being received on June 1, 2012. Id. The Government then asserts that the report was approved by the supervisor of the Flint ATF office, and it was sent to the United States Attorney's Office for review in August 2012. Id.

The United States Attorney's Office decided to pursue prosecution in January 2013, and a federal indictment was returned by the grand jury on February 6, 2013. Id. at 3-4; see also Indictment (Dkt. 1). The indictment charges Defendant with felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1), arising out of the December 29, 2011 search of his residence. Indictment (Dkt. 1).

An arrest warrant based on the federal indictment was issued and sent to the Michigan Department of Corrections the next day. Gov't Br. at 4. The United States Attorney's Office did not immediately request a writ of habeas corpus, however, because it believed Defendant would be re-paroled shortly and released to federal custody. Id. When it became apparent that parole was not imminent, the Government requested a writ on September 17, 2013 (Dkt. 3), and Defendant had his initial appearance on October 3, 2013. Defendant filed the instant motion approximately three weeks later.

### III. ANALYSIS

**A. The Speedy Trial Act**

Although the bulk of Defendant's argument focuses on his constitutional right to a speedy trial under the Sixth Amendment, Defendant cursorily mentions in his supplemental brief that the Speedy Trial Act also was violated. Def.'s Supp. Br. at 7. The Speedy Trial Act provides, in relevant part:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

3

18 U.S.C. § 3161(b). Defendant argues that he was arrested in December 2011, but not indicted until February 2013. According to Defendant, the Speedy Trial Act requires dismissal because more than 30 days passed between his arrest and his indictment. Def.'s Supp. Br. at 7. The Court disagrees.

The Sixth Circuit, in an unpublished decision, addressed a similar scenario in United States v. Payne, 966 F.2d 1455 (6th Cir. May 7, 1992) (Table). In Payne, a federal search warrant was executed in May 1989 by a group composed of federal agents, a Jefferson County Police Department detective, and a local police officer and detective. Id. at *1. During the search, the team discovered a firearm and ammunition. Id. Consequently, the defendant was arrested by the Jefferson County Police Department detective for possession of a handgun by a convicted felon in violation of state law. Id. He was indicted on the state offense three months later. Id. In December 1989 — approximately seven months after the initial arrest — the defendant was indicted for felon in possession in federal court, and the state charges were dropped a few months later. Id. The defendant, who was not being held at the time, was arrested and brought into federal court in September 1990. Id. Defendant subsequently moved to dismiss the indictment under the Speedy Trial Act, claiming that his May 1989 arrest "was for all practical purposes a federal arrest since it arose from a federal search warrant." Id. The district court disagreed and denied the defendant's motion.

The Sixth Circuit affirmed the district court's conclusion that no Speedy Trial Act violation occurred. Citing published Sixth Circuit authority, the court noted that

> A defendant is not "arrested" for purposes of the Speedy Trial Act until formal charges are pending. An "arrest" refers to the point at which a defendant is charged with the crime; therefore, a defendant is not "arrested" until a formal complaint or formal charge is issued.

4

> Regardless of the degree of federal involvement in a state investigation and arrest, only a federal arrest initiates the running of the time limitation established by 18 U.S.C. § 3161. An arrest by state officers, who are accompanied by federal officers, does not constitute an "arrest" under § 3161. There is no federal arrest until the defendant is taken into federal custody, notwithstanding the fact that the state and federal officials were cooperating when the defendant was in state custody.

Id. at *2 (quoting United States v. Blackmon, 874 F.2d 378, 379-380 (6th Cir. 1989) (internal citations omitted)). The Sixth Circuit concluded that because the defendant "was arrested on state charges" and was taken into custody by state police, his federal "arrest" did not occur until after the federal indictment was issued, notwithstanding the earlier federal involvement in the execution of the federal search warrant. Id.

The instant action presents an even stronger case that no Speedy Trial Act violation occurred. The search warrant was issued by a state court based on a possible violation of state law. See Gov't Br. at 2. Although the team that executed the search warrant was composed of federal and state officers, Defendant was "booked" based on the state offense at the local jail. See id. at 3. Moreover, Defendant's subsequent incarceration in state custody was a result of a state parole violation, and there is no evidence that this was undertaken at the federal government's insistence. See Def.'s Mem. at 2; Gov't Br. at 3.[3]

---

[3] There is some authority suggesting that "where a state arrest and detention are used as a device to restrain a defendant until the federal authorities choose to prosecute, the time the defendant spends in state custody can be included in the calculation of time under the Federal Speedy Trial Act." See United States v. Anderson, No. 10-20269, 2011 WL 7070529, at *2 (W.D. Tenn. July 27, 2011) (Vescovo, M.J.) accepted and adopted by 2012 WL 174874 (W.D. Tenn. Jan. 20, 2012). Defendant offhandedly asserts that he "was detained when only the federal authorities would be bringing charges against him for the gun violations." Def.'s Supp. Br. at 5. Nevertheless, there is no evidence that Defendant was detained solely because of the federal government. Defendant was released following his December 2011 arrest, and was re-arrested a few weeks later by his parole officer based on having violated his state parole. There is no evidence that Defendant's arrest for a state parole violation was done at the insistence of the federal government while it determined whether or not to prosecute. To the contrary, Defendant

5

The first federal charges filed against Defendant came in the form of the grand jury's indictment; no federal complaint was filed and he was not held in federal custody. See United States v. Cooper, No. 08-20464, 2012 WL 12706, at *12 (E.D. Mich. Jan. 4, 2012) (finding no Speedy Trial Act violation where indictment was first formal charge against the defendant, because "it is well-settled that a defendant is not 'arrested' for purposes of the Speedy Trial Act until formal federal charges are pending, that is, when a formal complaint or charge is issued" (citation omitted)). Accordingly, the Court concludes that no Speedy Trial Act violation occurred based on the pre-indictment arrests.

## B. The Sixth Amendment

Most of Defendant's argument focuses on his Sixth Amendment right to a speedy trial. Defendant argues that because his arrest in December 2011 was for all intents and purposes a federal arrest, his constitutional right to a speedy trial was violated because it has been two years since his arrest. Def.'s Mem. at 3-4.

The Sixth Amendment to the United States Constitution guarantees, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. const. amend. VI. The Supreme Court has announced a four-factor balancing test to determine whether a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. See Barker v. Wingo, 407 U.S. 514, 530 (1972).

The Sixth Circuit has explained that "[t]he length of the delay is a threshold requirement. If the length of the delay is not 'uncommonly long,' then judicial examination ends. . . . A delay

---

remained in state custody even after the federal indictment was issued so as to avoid "interfere[ing] with the state sentence [Defendant] was serving." Gov't Br. at 6. See United States v. Hatchett, No. 08-256-1, 12-1100, 2013 WL 6484511, at *5 (E.D. Pa. Dec. 9, 2013) (defendant being held by state for violation of parole did not start federal speedy trial clock).

approaching one year is presumptively prejudicial and triggers application of the remaining three factors." Maples v. Stegall, 427 F.3d 1020, 1025-1026 (6th Cir. 2005) (citing Doggett v. United States, 505 U.S. 647, 652 (1992)); see also United States v. Crawford, 489 F. App'x 866, 867 (6th Cir. 2012) ("The first factor — length of delay — is a threshold requirement, and if the delay is not uncommonly long, judicial examination ceases." (quotation marks and citation omitted)). The length of delay is measured from the earlier of the date of arrest or the date of the indictment. See Maples, 427 F.3d at 1026.

The parties' primary disagreement concerns the appropriate date to use for determining the length of delay. Defendant argues that the time should be calculated from his December 2011 arrest, resulting in a nearly two year delay. Def.'s Mem. at 4. The Government responds that the clock did not start until the federal indictment in February 2013, and thus the delay is less than eight months — a reasonable amount of time. Gov't Br. at 5. The core issue underlying the parties' disagreement is whether the December 2011 arrest should be considered "federal" (thereby starting the clock) or "state."

### i. State v. Federal Arrest

Defendant concedes that numerous federal appellate courts, including the Supreme Court in dicta, have concluded that "an arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign." See Def.'s Supp. Br. at 3-4 (citing United States v. MacDonald, 456 U.S. 1, 10 n.11 (1982); United States v. Garner, 32 F.3d 1305, 1309 (8th Cir. 1994); United States v. Muniz, 1 F.3d 1018, 1024 (10th Cir. 1993); and Crawford, 489 F. App'x at 867). Defendant argues, however, that the December 29, 2011 arrest was in reality a federal arrest, thereby starting the federal speedy trial clock. In support of this argument, Defendant highlights that the search

7

warrant's execution was conducted by a "federal task force" including "several full-time ATF agents." Def.'s Supp. Br. at 2. Defendant further maintains that "[t]here is no indication that any local prosecutorial office was contacted regarding the arrest or prosecution," and that Sergeant Bernritter (purportedly sworn as a federal agent) submitted a standard ATF report to the Flint ATF office. Id. at 3. Lastly, Defendant provides statistics and press release statements by United States Attorney Barbara McQuade indicating that the federal government became more aggressive in bringing felon-in-possession charges between 2011 and 2013. Id. at 1-2. As a result, Defendant argues that the "[i]nstant case was an arrest by a federally supervised group for a prosecution that was always going to federal court. No state court charges were ever brought or considered." Id. at 4. Defendant thus claims that the December 29, 2011 arrest was a federal arrest, thereby starting the speedy trial clock.

The Government responds that the December 29, 2011 was not a federal arrest. First, the Government denies Defendant's claim that exclusive federal prosecution was inevitable due to a purported program of federally charging felons in possession. Def.'s Supp. Br. at 1-2. The Government provides its own statistics suggesting that the number of federal felon-in-possession charges in Flint in the six month period after July 14, 2011 was equal to, or even less than, the number brought in the six month period prior to July 14, 2011. Id. at 2.[4] The Government also notes that while the number of federal felon-in-possession charges in 2012 and 2013 may have considerably exceeded those in prior years, there is no evidence that the number of state court felon-in-possession charges also did not rise during this period. Id.

Next, the Government argues that the details of Defendant's arrest exemplify that it was state, not federal. The Government highlights that the arrest arose out of the execution of a state

---

[4] According to the press clipping attached to Defendant's supplemental brief, United States Attorney Barbara McQuade announced the new initiative on or around July 14, 2011. See ABC 12 Report of Press Conference, Ex. 1 to Def.'s Supp. Br. (Dkt. 15-2).

8

search warrant, issued for a possible violation of state law. Id. at 3. The Government further notes that while federal agents assisted with executing the warrant, Defendant was "arrested by Sgt. Bernritter and taken to Flint City Jail where he was 'booked' on suspicion of being a felon in possession of firearms and parole violation, but then released pending further investigation." Id. The Government claims that "[a]ll of that was done under authority of Michigan law only — as was [Defendant's] subsequent arrest and incarceration on January 17, 2012, for state parole violation." Id. Accordingly, the Government contends that the December 2011 arrest was a state, not federal, arrest. The Court agrees.

As Defendant acknowledges, numerous courts have held that, in the Speedy Trial Act context, the fact that the task force that arrests a defendant is composed of both federal and state agents does not turn a state arrest into a federal arrest. See Def.'s Supp. Br. at 4; see also United States v. Himmelreich, 265 F. App'x 100, 103 (3d Cir. 2008) (rejecting argument that "federal funding, technical assistance, advice, and coordination associated with" a joint task force rendered defendant's "arrest and subsequent detention a federal matter for purposes of the Speedy Trial Act"); United States v. Campos-Olvera, No. CR-10-6011, 2010 WL 1740799, at *1 (E.D. Wash. Apr. 29, 2010) ("Contrary to Defendant's assertion, the Speedy Trial Act is not triggered by Defendant's arrest by federal authorities when he was arrested only on state warrants and incarcerated on state charges. An arrest by federal officers who immediately relinquish control of the arrestee to state officials does not trigger the 30-day period of Section 3161(b)."); United States v. Blackmon, 874 F.2d 378, 381 (6th Cir. 1989) ("Regardless of the degree of federal involvement in a state investigation and arrest, only a federal arrest initiates the running of the time limitation established by 18 U.S.C. § 3161."). Defendant provides no authority or argument for why this rule should be different in analyzing a Sixth Amendment

9

claim, and, indeed, Defendant concedes that it "likely" applies. Def.'s Supp. Br. at 4.; see also Muniz, 1 F.3d at 1024 ("Where the initial arrest is solely for a violation of state law, then it is generally accepted that this arrest does not mark the commencement of the speedy trial right as to a subsequent federal charge, even if based on the same activity." (quotation marks and citation omitted)); United States v. Rowell, 612 F.2d 1176, 1180 (7th Cir. 1980) (despite joint effort of federal and state officials, start of calculation for Sixth Amendment purposes was not date of arrest for state crimes); United States v. Lai Ming Tanu, 589 F.2d 82 (2d Cir. 1978) (same).

Here, while Defendant contends that his December 2011 arrest was solely and inevitably for federal charges, the facts suggest otherwise. Defendant was arrested after a state-issued search warrant, obtained by state actors based on possible violations of state law by a state parolee, was executed by a task force composed of state and federal officials. See Gov't Supp. Br. at 3. After his arrest, Defendant was taken to a local jail where he was "booked" based on the state felon-in-possession law. Id.; Gov't Br. at 3. Defendant's subsequent incarceration in January 2012 was done by his parole officer based on state parole violations, and Defendant was taken into state custody. Gov't Supp. Br. at 3. Moreover, as the Government highlights in its supplemental briefing, while there may have been an increased interest by the federal government in bringing federal felon-in-possession charges, this does not mean that the state did not have a continued (or even increased) interest in bringing these charges as well. Therefore, the instant case falls more on the side of a state arrest, the underlying facts of which ultimately led the Government — unlike the state — to decide to charge Defendant.[5]

---

[5] The fact that the state chose not to independently prosecute Defendant for a violation of the state felon-in-possession law, Mich. Comp. Laws § 750.224f, does not mean the initial arrest was federal. For example, the state may have chosen to forego prosecution in light of Defendant serving time for the parole violation, whereas the federal government may have concluded that this was an insufficient penalty.

10

Given that the arrest was a state, not federal, arrest, less than nine months passed between the filing of the federal indictment and Defendant's motion to dismiss. See United States v. Schaffer, 586 F.3d 414, 424 (6th Cir. 2009) ("Because Schaffer was neither arrested for violating federal law nor officially accused of doing so prior to his indictment on February 27, 2008, the protections of the Sixth Amendment were not triggered in this case before that date."). The Sixth Circuit has held that, in general, "[d]elays several months short of one year are not 'uncommonly long.'" See United States v. Gardner, 488 F.3d 700, 719 (6th Cir. 2007). And while the Court acknowledges that the Government delayed bringing a writ of habeas corpus for approximately seven months following the indictment, trial in this action still was scheduled for December 2013 prior to the filing of Defendant's motion. This would have resolved the matter within ten months of the indictment. Accordingly, the Court finds that, at this time, the delay in this action has not been "uncommonly long." No Sixth Amendment speedy trial concerns are raised at this time.[6]

**ii. Length of Time**

Even if the December 2011 arrest was construed as a federal arrest, however, the Court still would conclude that the pre-indictment delay in this case does not raise Sixth Amendment concerns. As the Government highlights, the Supreme Court has held that "when defendants are not incarcerated or subjected to other substantial restrictions on their liberty, a court should not weigh that time towards a claim under the Speedy Trial Clause." United States v. Loud Hawk, 474 U.S. 302, 311-312 (1986). To that end, "[t]he Speedy Trial Clause does not apply to pre-

---

[6] Moreover, the Court notes that even if it were to consider the remaining factors, they weigh against Defendant at this point in the proceedings: (1) the Government has provided a reasonable explanation for the delay in seeking the writ of habeas corpus (to avoid interfering with the state's punishment and rehabilitative efforts for the parole violation, which the Government believed would be over shortly); (2) Defendant did not raise the speedy trial concerns until his October motion to dismiss (despite the Notification of Detainer issued shortly after the federal indictment); (3) Defendant admits that he cannot identify any actual prejudice resulting from the delay at this time (Def.'s Supp. Br. at 6), and the presumption of prejudice does not yet apply.

11

indictment delay because 'only a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections of that provision.'" Barawskas v. Caruso, No. 05-74491, 2006 WL 3104038, at *2 (E.D. Mich. Oct. 31, 2006) (quoting United States v. Lovasco, 431 U.S. 783, 789 (1977)); see also Starks v. McMackin, 943 F.2d 52, *1 (6th Cir. Aug. 29, 1991) (Table) ("A lengthy pre-indictment delay, standing alone, does not violate speedy trial protections of the Sixth Amendment. The primary purpose of the Sixth Amendment guarantee of a speedy trial is to minimize the length of incarceration, impairment of liberty, and disruption of life." (internal citations omitted)). This is because "the speedy trial guarantee is designed the minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." United States v. MacDonald, 456 U.S. 1, 8 (1982); see also id. at 8-9 ("Once charges are dismissed, the speedy trial guarantee is no longer applicable. At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation. . . . But with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending.").[7]

This rule was exemplified by the Ninth Circuit in United States v. Kidd, 734 F.2d 409 (9th Cir. 1984). In that case, the defendant attempted to obtain a military identification card. He was arrested in 1980 and released without the filing of any charges. After being indicted in 1982, he claimed that his rights to a speedy trial were violated. The Ninth Circuit disagreed. It held that "[b]ecause Kidd was released without being charged, . . . the Sixth Amendment . . . do[es] not apply to the preindictment delay." Id. at 412.

---

[7] Defendant does not raise a due process claim under the Fifth Amendment. See MacDonald, 456 U.S. at 7-8.

Similarly here, even if the December 2011 arrest was federal, Defendant was released without being charged. Other than the already-imposed restrictions on Defendant for his state parole, there is no indication that any additional bond requirements or other "impairments of liberty" were added onto Defendant as a result of the December 2011 arrest. To the extent Defendant seeks to use his January 2012 incarceration as a means of showing that his liberty was restrained, this was done by Defendant's parole officer for a violation of Defendant's state parole. There is no evidence suggesting that Defendant's incarceration was done to assist the federal government, at the federal government's request, or relating to federal charges. See Lovasco, 431 U.S. at 789 (speedy trial right applies pre-indictment when Defendant is held "to answer a criminal charge"). More likely, the January 2012 incarceration sought to remedy the wrong against the state, i.e., not complying with state parole terms. See Woollard v. Washington, No. 10-14487, 2013 WL 2635183, at *4 (E.D. Mich. June 12, 2013) ("Petitioner was held in state custody during that period of time as a parole violator, not on the criminal charges. His arrest and confinement on a parole violation would not serve to start the running of the speedy trial clock as to the criminal charges."). Therefore, the "Sixth Amendment . . . do[es] not apply to the preindictment delay." Kidd, 734 F.2d at 412.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to dismiss (Dkt. 11).

SO ORDERED.


Dated: January 24, 2014　　　　　　　　　　　s/Mark A. Goldsmith
　　　Flint, Michigan　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

13

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 24, 2014.

                                          s/Deborah J. Goltz
                                          DEBORAH J. GOLTZ
                                          Case Manager